**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Salaad F. Mahamed,

                              Plaintiff,                **MEMORANDUM OPINION
AND ORDER**

vs.                                                      Civil No. 07-4815 ADM/FLN

Sheriff Bruce M. Anderson; Sergeant
Tom Zerwas; and Sergeant Steve
Pedersen,

                              Defendants.

_____

Stephen L. Smith, Esq., The Law Firm of Stephen L. Smith, PLLC, Minneapolis, MN, on behalf of the Plaintiff.

Daniel P. Kurtz, Esq., Everett & Vanderwiel, PLLP, Buffalo, MN, appeared for and on behalf of the Defendants.
_____

## I.  INTRODUCTION

      This matter is before the undersigned United States District Judge on Defendants Sheriff Bruce M. Anderson ("Anderson"), Sergeant Tom Zerwas ("Zerwas"), and Sergeant Steve Pedersen's ("Pedersen") (collectively "Defendants") Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32].  In his Complaint [Docket No. 1], Plaintiff Salaad F. Mahamed ("Mahamed") alleges Defendants violated 42 U.S.C. § 1983 during his pre-trial detention in the Sherburne County Jail.  For the reasons set forth below, Defendants' Motion to Dismiss or Alternatively for Summary Judgment is granted in part and denied in part.

## II.  BACKGROUND[1]

Mahamed was arrested by Immigration and Customs Enforcement officials in North Dakota for allegedly violating his immigration status and was later transferred to Sherburne County Jail, a temporary federal detention facility, on May 16, 2007.  Mahamed Decl. [Docket No. 50] ¶ 1.  Mahamed was initially placed in a regular cell but was moved to segregation due to several incidents over a period of months.[2]  Id. ¶¶ 2-10.

On August 21, 2007, jail staff accused Mahamed of not making his bed and ordered him to go to lockdown.[3]  Id. ¶ 11. Initially, Mahamed refused to go to lockdown so prison staff ordered the other inmates to lockdown.  Zerwas Aff. [Docket No. 36] ¶ 8.  Eventually, Mahamed angrily returned to his cell.  Mahamed Aff. ¶ 11.  Zerwas arrived at Mahamed's cell with another guard and ordered Mahamed to get on his knees, face away from the door, and put his hands behind his back.  Id. ¶ 12.  Zerwas then placed handcuffs on Mahamed, twisted his wrist, and walked Mahamed down the stairs toward segregation.  Id.  As Mahamed admits, he began to yell at Zerwas calling him a "racist motherfucker" and a "coward" and demanded that Zerwas stop "torturing" him.  Id.  Zerwas pushed Mahamed into a wall and pushed his elbow and shoulder into Mahamed's back.  Id.  Zerwas then placed Mahamed in the isolation cell and ordered him

---

[1] In this Motion to Dismiss or Alternatively for Summary Judgment, the facts are viewed in the light most favorable to the Plaintiff.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2] Mahamed asserts that he had a contentious relationship with prison staff and that as a result, he was often placed in segregation.  He had returned to the general population before the above-mentioned incidents occurred.

[3] When a prisoner is ordered to lockdown, he has to return to his cell with the door locked.  Zerwas Aff. ¶ 3.  Prison staff use lockdowns to diffuse confrontations among the inmates or to remove unruly inmates from common areas so they do not incite other inmates.  Id.

onto his knees and stomach. Id. ¶ 13. Zerwas placed his knees on Mahamed's back, which caused Mahamed to vomit, and removed the handcuffs. Id. Mahamed did not see a doctor immediately but prison staff arranged for a medical visit after Mahamed indicated that he could not sleep, was having trouble breathing, had pain in his head, wrists, shoulder, and back, and was experiencing flashbacks from experiences he had in Somalia. Id. ¶¶ 14, 15. The doctor noted a bruise on Mahamed's arm as well as the pain in his wrists, shoulder, and back. Id. ¶ 15.

A second incident occurred on October 10, 2007. Mahamed was in a common area and asked a guard to change the channel on a television.[4] Id. ¶ 18. The guard would not change the channel, which prompted a protest from Mahamed. Id. As a result, Mahamed was ordered to lockdown by the guard in charge of the unit, precipitating an angry response from Mahamed in which he told the guard he was being treated unfairly. Id. The guard repeated his command that Mahamed go to lockdown, and Mahamed eventually returned to his cell, where he began to kick the door. Id. Pedersen arrived shortly thereafter and ordered Mahamed to lie on the floor. Id. ¶ 19. Mahamed immediately laid on his back and began shouting, "What did I do? What did I do? This is not fair. I'm human, how long are you going to keep torturing me?" Id. He also shouted, "You want to shoot me, go ahead!" Id. Pedersen discharged his taser, and one probe hit Mahamed in his hand and the other probe hit one of his testicles. Id. Mahamed passed out and woke up in a wheel chair. While Mahamed was unconscious, Pedersen summoned the jail medical staff who attended to Mahamed. Pedersen Aff. ¶ 17.

Mahamed, as attorney pro se, brought this action on December 12, 2007. In the

---

[4] Prison staff change the channels on the television in this area because inmates are not allowed to do so. Pedersen Aff. [Docket No. 37] ¶ 3.

Complaint, Mahamed alleges that Zerwas and Pedersen used excessive force in restraining him, that Anderson allowed jail officials to "harass, torture, and retaliate" against Mahamed, and that he was denied medical treatment—specifically "his right to see a psychologist." Compl. at 3. After Mahamed's request for appointment of counsel was denied, he had some difficulty securing representation, and did not retain a lawyer until December 12, 2008. See December 22, 2008, Mem. Opinion and Order [Docket No. 43] at 1-3.

### III. DISCUSSION

**A.     Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Ordinarily, if a district court relies on "matters outside the pleadings" in considering a motion to dismiss, the motion to dismiss is converted to one for summary judgment. BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687-88 (8th Cir. 2003). A court has "complete discretion" in determining whether to accept materials beyond the pleadings, but should not do so if the non-moving party has not yet had an opportunity to discover facts or evidence to support its allegations. Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003); BJC Health Sys., 348 F.3d at 687-88. However, the court may consider public records and matters that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). In general, "[m]ost courts view matters outside the pleading[s] as including any written or oral evidence in support of or in opposition to the pleading[s] that provides some substantiation for and does not merely reiterate what is said in the pleadings." BJC Health Sys., 348 F.3d at 687.

Both parties rely on affidavits and exhibits outside of the pleadings, therefore the Court will treat the Motion as one for summary judgment. "In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the

plaintiff of a constitutionally protected federal right." Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002). Zerwas and Pedersen, as jail guards, do not appear to dispute they acted under color of state law. They argue, however, that their conduct was objectively reasonable and that if they engaged in any wrongful conduct, the doctrine of qualified immunity protects them from liability.

**B.     Excessive Force**

Mahamed alleges that Zerwas and Pedersen used excessive force in two separate incidents while restraining him at the Sherburne County Jail. As a pre-trial detainee, an excessive force claim is

> analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment clause" standard which is used for convicted prisoners. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose.

Johnson-El v. Schomehl, 878 F.2d 1043, 1048 (8th Cir. 1989). Because Mahamed's claim is directed at law enforcement officers, the Fourth Amendment's objective reasonableness standard applies, and "[t]he question for the [fact finder] is whether, judging from the perspective of a reasonable officer at the scene . . . , the totality of the circumstances justifies the use of the force used." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990).

**1.     The August 21, 2007 Incident**

Mahamed argues that the force Zerwas used to subdue and transport him during the August 21 incident constituted excessive force. Zerwas argues that his actions were reasonable, necessary, and related to the legitimate purpose of promoting safety and security in the jail. The

circumstances surrounding the incident are as follows: (1) Mahamed refused to go to lockdown necessitating that the entire cell block be sent to lockdown to maintain order; (2) once Mahamed finally complied, Zerwas placed him in handcuffs; (3) Mahamed became belligerent and cursed and resisted Zerwas' commands; (4) Zerwas then increased the pressure on Mahamed's wrists and pushed him against the wall in an effort to reassert control; (5) once Mahamed calmed down, Zerwas stopped applying pressure; and (6) while removing the handcuffs, Zerwas placed his knees in Mahamed's back.

The application of handcuffs without evidence of any long term damage does not generally state an excessive force claim. Foster, 914 F.2d at 1082. Additionally, the use of a wrist lock is an accepted pain compliance technique. See Frank Aff. [Docket No. 53] (PPCT Defensive Tactics, Instructor Manual (2005) at 4). Mahamed can cite to no case where a defendant using a wrist lock has been held liable for using excessive force when the technique is used as a response to the escalation of a confrontation by a plaintiff. Mahamed also does not have a viable claim as a result of Zerwas pushing him into the wall because he has demonstrated no injury from that act. In many cases, pushing a non-compliant detainee against a wall to maintain control has been found to be an objectively reasonable use of force. See Foster, 914 F.2d at 1082 (finding no excessive force when plaintiff was pushed into the wall twice); Blount v. Echols, Civ. No. 07-5046, 2008 WL 4368936 at *8 (W.D. Ark. Sept. 24, 2008) (finding that pushing plaintiff against the wall and pinning his head was not an application of excessive force). Finally, Zerwas' placement of his knees on Mahamed's back was not excessive force. Placing one's knees on the back of a handcuffed individual when removing handcuffs of a prone prisoner is standard procedure. Officers are instructed that in order to control the suspect,

"he/she first places one knee on the subject's back between the shoulder blades. Then the other knee is placed on the lower back to prevent the suspect from rolling away from the officer." PPCT manual at 3-8. Based on the circumstances regarding the August 21 incident, the amount of force used by Zerwas was objectively reasonable, and he is entitled to summary judgment on the excessive force claim.

### 2.     The October 10, 2007 Incident

Mahamed argues that being tased in the hand and testicle constitutes excessive force. Pedersen argues that the use of a taser was warranted because Mahamed was being non-compliant and aggressive. Pedersen has submitted an affidavit in which he avers that he repeatedly told Mahamed to turn over onto his stomach and when he approached Mahamed, Mahamed tried to kick him. Pedersen Aff. ¶¶ 11-14. While the circumstances as related by Pedersen might warrant the use of a taser, on summary judgment the Court must assume facts most favorable to Mahamed. In Mahamed's version of events, he was not told to roll over and did not kick at Pedersen. Mahamed was not aggressive; he was merely non-compliant. Additionally, there has been no testimony proffered of a policy for when an officer should escalate the amount of force used on a detainee or whether there are intermediate steps between a oral command and the use of a taser. See Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (finding that the local sheriff's department had a policy that required use of open hand measures prior to taser use and the policy was relevant to an inquiry into objective reasonableness). Taking the facts in the light most favorable to Mahamed, Pedersen's use of a taser was a constitutional violation.

Pedersen argues that even if there is a constitutional violation, he is entitled to qualified

immunity because the use of a taser is not a clearly established constitutional violation.  The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A court must determine both whether the defendant violated a constitutional right and if that right was clearly established. Pearson v. Callahan, 129 S. Ct. 808, 816, 818 (2009).  To determine whether a particular right was clearly established, it must be viewed in a particularized, relevant sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).  "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994).  "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).

  Reviewing courts have split on whether the use of a taser is a clearly established constitutional violation depending on the degree of aggressiveness of the defendant. Compare Jasper v. Thackler, 999 F.2d 353, 354 (8th Cir. 1993) (finding that the use of a stun gun did not constitute an Eighth Amendment violation because the detainee threatened to harm a guard and then lunged toward him) with Orem, 523 F.3d at 448 (finding that an officer was not entitled to

qualified immunity after using a taser when the detainee posed no threat and other methods of restraint could and should have been used); see also Bailey v. County of Kittson, Civ. No. 07-1939, 2008 WL 906349, at *16 (D. Minn. March 31, 2008) (finding excessive use of a taser on a mentally ill detainee who refused to turn around and stated that he had Hepatitis C and would bite or spit at anyone who approached him); Brown v. City of Golden Valley, 534 F. Supp. 2d 984, 994-95 (D. Minn. 2008) (finding that it was clearly established that using a taser on a detainee without warning for failure to end a 911 call was an unconstitutional use of excessive force). Viewing the facts in the light most favorable to Mahamed, he was uncooperative but not dangerous or threatening, and therefore the use of a taser violated his clearly established constitutional right to be free from excessive force. For this reason, summary judgment is denied on the claim of excessive force against Pedersen.

**C.     Deliberate Indifference**

Mahamed argues that Defendants were deliberately indifferent to his medical needs after force was applied on August 21 and October 10 and for failing to provide him with a psychologist. To prove a claim of constitutionally inadequate medical care, Mahamed must demonstrate "(1) that [he] suffered objectively serious medical needs and (2) that prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)).

The record is uncontested that Mahamed received medical treatment in a timely fashion

after the October 10 incident. See Pedersen Aff. ¶ 17. After the August 21 incident, Mahamed did not immediately receive medical attention, but he did receive medical attention shortly after complaining about continued pain. While he may well have experienced pain in his wrists and shoulder, there is no indication that it was so severe as to be easily recognized by prison staff at the time of the incident as requiring immediate medical attention. Once he complained of the severity to the prison staff, Mahamed was provided treatment. The issue of a single episode of vomiting is slightly different because it likely was apparent to prison staff when it occurred. However, one incident of vomiting does not necessarily rise to the level of a serious medical need. See Henderson v. Virginia, Civ. No. 7:07-00266, 2008 WL 204480, at *15 (W.D. Va. Jan.23, 2008) (finding that brief episodes of vomiting did not constitute a serious medical need); Scales v. Bristol Virginia City Jail, Civ. No. 7:06-556, 2007 WL 777532, at *5 (W.D. Va. Mar. 13, 2007) (finding that an upset stomach, nausea, and vomiting were not serious medical needs); Ross v. McGinnis, Civ. No. 00-275E, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (holding that complaints of abdominal pain, vomiting, heartburn, constipation, body odor, and extreme body heat do not constitute a serious medical need). Because there was no objective manifestation that Mahamed was in obvious medical distress, and once he complained of pain he was provided treatment, Defendants were not deliberately indifferent for failing to provide medical treatment after the August 21 incident.

      Finally, Mahamed's claim of deliberate indifference for failure to provide a psychologist also fails. Mahamed had no medical diagnosis indicating he needed to see a psychologist. Moreover, he did not exhibit symptoms such that a layperson could easily recognize any problem. Defendants were not deliberately indifferent in failing to provide Mahamed with a

11

psychologist. See McNeal v. Sherburne County, Civ. No. 07-2494, 2008 WL 2224882, at *5 (D. Minn. May 27, 2008) (finding no deliberate indifference for failing to provide an inmate with a psychologist).

**D.     Claims Against Anderson**

Mahamed alleges that Anderson "has allowed the administration [] at the Sherburne County Jail to harass, torture, and retaliate" against him. Compl. at 3. While not explicitly pleaded as such, Mahamed's § 1983 claim against Anderson appears to have been intended as asserting a Monell action.[5] Under Monell, municipal liability arises when a constitutional injury directly results from "action pursuant to official municipal policy of some nature." Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). The policy may derive from an "officially adopted and promulgated" policy by the governmental governing body or from a widespread "custom or usage" within the municipality. Id.; see also Thelma D. ex rel. Delores A. v. Board of Educ., 934 F.2d 929, 932 (8th Cir. 1991). A governmental "custom" may serve as the basis for § 1983 liability "even though such a custom has not received formal approval through the body's official decision making channels." Monell, 436 U.S. at 659; see also Jane Doe "A" v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990). A plaintiff may establish liability "through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a custom or usage with the force of law." McGautha v. Jackson County, Miss. Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994) (quotation omitted). To demonstrate an unconstitutional "custom," a plaintiff must prove

---

[5] Mahamed has alleged and presented no facts that Anderson individually played a role in the incidents in question, or that he had any personal knowledge of the incidents.

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe "A," 901 F.2d at 646.

Mahamed has presented no evidence that any custom or policy created by Anderson resulted in a constitutional violation. There is no evidence of a continuing, widespread, and persistent pattern of unconstitutional misconduct by Anderson's employees or that Anderson was deliberately indifferent to any abuses after they were brought to his attention. Because Mahamed has failed to present any evidence that would support a Monell claim, summary judgment is appropriate for Anderson.

**E.      Whether Mahamed Has Asserted Individual Capacity Claims**

Defendants raised for the first time in their Reply Memorandum the issue of whether Mahamed has asserted individual capacity claims against them or if they are only Defendants in their official capacity. Mahamed commenced this action pro se but now has representation. Mahamed has not had an opportunity to respond to this argument, and the Court has not had the benefit of briefing. The Court takes no position on the merits of this issue, but Defendants have leave to file a motion, if they so choose, in which they can present this motion to the Court and Mahamed will have an opportunity to respond.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is **GRANTED** in part and **DENIED** in part;

2. Defendants Bruce A. Anderson and Sergeant Tom Zerwas' Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is **GRANTED** in its entirety; and

3. Defendant Sergeant Steve Pedersen's Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is **GRANTED** as to the deliberate indifference claim.

4. Defendant Sergeant Steve Pedersen's Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is **DENIED** as to the excessive force claim regarding the October 10, 2007 incident.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 30, 2009.